

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: THE MATTER OF CENTRAL GULF          CIVIL ACTION
LINES, INC., OWNER, AND WATERMAN
STEAMSHIP CORPORATION, OWNER PRO
*HAC VICE*, OPERATOR, AND BAREBOAT           NO.   97-3829
CHARTERER OF, THE LASH BARGE                 C/W 99-1888
CG-F70, PRAYING FOR EXONERATION
FROM AND/OR LIMITATION OF LIABILITY          SECTION: E/4

### ORDER AND REASONS

The following motions have been filed by the parties and are

pending before the Court:

1.  Motion by claimant R.L. Baron S.A. (hereinafter "Baron")

for issuance of Letters of Request to the Kingdom of Norway, to

depose the Assurance Foreningen GARD (Jensidig), the P & I insurer

of the LASH vessel, the M/V GREEN ISLAND, the mother ship of the

LASH barge which contacted and sunk the M/V GREEN OPAL, and/or Ole

Enge, a Senior Claims Executive of GARD, and a motion to substitute

an amended Letter of Request with minor changes;

1

DATE OF ENTRY
JUN 0 1 2000



2.   Motion by claimant Baron for issuance of Letters of Request for International Judicial Assistance to the Republic of Singapore, to depose Manik Shahani, Captain A.K. Sharma, Mokhtar Sabar and Captain Anil Gidwan, and a motion for issuance of amended Letters of Request with minor changes;

3.   Motion by claimant Baron for issuance of Letters Rogatory to the Chief Justice and his companion Puisne Judges of the High Court of Judicature at Calcutta, India, to depose M.L. Jah, O.P. Singhee, T.A. Pote, Ratinda Nath Dutta, Captain Das Chandhary, Captain R.J. Yadav, Sarrashri D. Chakraboty, S. Sarker, Shri Gautam Sen, Shri Divan, Shri H.P. Roy, Shri Prakash Barnard, Shri Shanti Chakubarty, Captain P. Misra, and Gul R. Jagtiani and an amended motion seeking issuance of Letters Rogatory seeking to depose A. Gosh, Gopal Bhattacharjee, Yezdi Dastur, Captain Debashis Mitra, Jaswant Singhee, B.K. Singhee, and K.S. Kinghee, all of Calcutta, India;

4.   Motion of Masahiro Toyoda, Hajime Ono and Toshiaki Takeuchi, directors of Baron, under Rule 12(b) to dismiss the Third Party Complaint of Central Gulf Lines, Inc. ("CGL") and Waterman

Steamship Corporation ("Waterman") for insufficiency of service of process, lack of *in personam* jurisdiction, and improper venue.

All motions are opposed by Waterman/CGL.  Oral argument was requested by the parties on these motions and heard.

### Facts

Briefly, this is a limitation of liability action by Waterman/CGL in connection with the sinking of the M/V GREEN OPAL in the Hooghly River in India on June 19, 1997, and the loss of the ship and its cargo.  The M/V GREEN OPAL was owned by R.L. Baron Shipping, S.A., and Baron brought suit against Waterman/CGL for wreck removal expenses and the total loss of the M/V GREEN OPAL. Various cargo interests representing cargo on the M/V GREEN OPAL also filed claims against Waterman/CGL.

*Motion of Baron for Issuance of Letters*
*Rogatory and/or Letters of Request*

### Relevant Procedural Events

Unfortunately, like the journey of the M/V GREEN OPAL on the Hooghly River, the progress of this litigation has been anything but smooth.  Without assigning blame, which is a fruitless exercise, there is little doubt that the cooperation level amongst counsel

3

litigating this action has descended to the depths, again like the M/V GREEN OPAL, and there appears to be a lack of interest in minimizing the enormous cost of this litigation.  It is quite disappointing that so mundane a task as scheduling the depositions of a number of witnesses, albeit witnesses located in foreign countries, has unleashed the type of paper barrage which is encompassed in the motions related to issuance of Letters Rogatory and/or of Request, particularly since the Court specifically requested that counsel, who all possess a very high degree of experience and professionalism, make every possible effort to work out the details of these depositions.  With the exception of the exchange of a few letters, in which counsel continue the tennis-like volley which has plagued this litigation for a number of months, it does not appear that any sincere effort was made to reach an agreement regarding setting the date, place, and time of these depositions, thereby obviating the need for a hearing of the motions for issuance of Letters Rogatory and/or of Request.  It is hoped that counsel reconsider their entrenched positions in fighting every battle in this litigation, regardless whether such battles reap any

4

true rewards to their clients, and recommit themselves to working together as professionals in a manner which they are capable of doing in order to minimize the expense to all concerned.

In any event, the current skirmish concerns deposing certain witnesses in Norway, Singapore, and India.  Almost one year ago, counsel agreed to reserve two weeks to take depositions of certain witnesses in India.  After learning that India was not a signatory to the Hague Convention, and thus not subject to a subpoena, CGL notified Baron that these depositions were in jeopardy.  However, CGL attempted to make arrangements to have a knowledgeable witness from Singapore and two knowledgeable witnesses from India to travel to New Orleans to be deposed, a very logical and economical partial solution to the logistical nightmare of these global depositions. However, counsel for Baron remarked that:

> Finally, before definitively scheduling the depositions, I would like to discuss the issue of file materials from Marco, Oceanic and Eastern Navigation. Obviously, if Shahani and the representatives of Oceanic and Eastern Navigation do not bring their file materials with them, the depositions will not be as meaningful.  I hereby take this opportunity to request your agreement and confirmation that the witnesses will bring both their own

> personal files as well as the corporate files
> of Marco, Oceanic and Eastern Navigation to New
> Orleans for the deposition.

Opposition to Motions for Issuance of Letters Rogatory, Exhibit C,
Letter of deKlerk to Acomb, Oct. 4, 1999.

The agreement to bring three witnesses to New Orleans derailed
with this request, as counsel for CGL replied, quite correctly, that
Oceanic Marco and Eastern Navigation were not parties to this action
and cannot be compelled to "bring their own personal files as well
as the corporate files" to New Orleans, and further, the phrase
"personal files" was ambiguous.  Counsel for Baron's reply was that
while he did not suggest that CGL could guarantee that the file
materials would be produced, Baron's position was that because Marco
and Oceanic were CGL's agents, CGL could arrange for them to produce
their files and that he would formally designate which files Baron
wishes them to produce.  The effort to produce these witnesses was
abandoned.  It should be noted that Waterman/CGL are under no legal
obligation to produce these witnesses in New Orleans, and were
attempting to do so to accommodate all parties and the Court and to
cooperate with opposing counsel.  Baron then filed the instant

motions for issuance of Letters Rogatory and/or Letters of Request.

## Discussion

Federal Rule of Civil Procedure 28(b) specifies the method by which depositions of witnesses may be taken in a foreign country. It provides as follows:

> Depositions may be taken in a foreign country (1) pursuant to any applicable treaty or convention, or (2) pursuant to a letter of request (whether or not captioned a letter rogatory), or (3) on notice before a person authorized to administer oaths in the place where the examination is held, either by the law thereof or by the law of the United States, or (4) before a person commissioned by the court, and a person so commissioned shall have the power by virtue of the commission to administer any necessary oath and take testimony. *A commission or letter of request* **shall** *be issued on application and notice and on terms that are just and appropriate.* It is not requisite to the issuance of a commission or a letter of request that the taking of the deposition in any other manner is impracticable or inconvenient; and both a commission and a letter of request may be issued in proper cases. A notice or commission may designate the person before whom the deposition is to be taken either by name or descriptive title. A letter of request may be addressed "To the Appropriate Authority in [here name the country]." When a letter of request or any other device is used pursuant to any applicable treaty or convention, it shall be captioned in

the form prescribed by that treaty or
convention. Evidence obtained in response to
a letter of request need not be excluded merely
because it is not a verbatim transcript,
because the testimony was not taken under oath,
or because of any similar departure from the
requirements for depositions taken within the
United States under these rules.

[Emphasis added]. Thus, Rule 28(b) is couched in mandatory terms

and states that "[a] . . . letter of request **shall** be issued on

application and notice on terms that are just and appropriate."

Baron has filed a motion for issuance of Letters of Request

pursuant to the Hague Evidence Convention addressed to the Kingdom

of Norway, requesting the issuance of compulsory process to depose

the Assurance Foreningen GARD (Jensidig), the P&I insurers of

Waterman Steamship's LASH vessel, the M/V GREEN ISLAND, the mother

ship of the LASH barge which collided with the M/V GREEN OPAL,

and/or Mr. Ole Enge, a Senior Claims Executive of the GARD. Baron

seeks to depose Mr. Enge, or another GARD representative, for the

following reasons. Baron contends that Enge has knowledge of

Waterman's LASH Barge operations, the policies and rules governing

Waterman's LASH operations, and the usual operating procedures and

equipment specifications used in Waterman's LASH operations. Baron

8

also contends that Enge has specific knowledge of the collision at issue and the investigation thereof, as well as possible prior accidents involving Waterman's LASH barges.  Baron asserts that because Waterman and CGL seek limitation of liability, Enge or another GARD representative may have critical knowledge on matters relevant to the limitation issues, and well as to the liability and damage issues inherent in the instant collision case.

Waterman/CGL suggest that the GARD and Enge deposition should be quashed because the GARD had no firsthand involvement with the investigation or extensive dealings with the Indian government and the two salvage contractors.  They argue that the GARD is not a party to the litigation.  This is not a valid basis to object to the deposition.  If in fact Mr. Enge or the GARD has no relevant knowledge, that will be discovered rather quickly in the deposition. Further, regardless whether the GARD participated in the salvage efforts, it or its witness Enge may have knowledge which is relevant to the limitation issues.

In their opposition memorandum, Waterman/CGL list a litany of discovery abuses by Baron and the U.K. Club, whom they claim is the

9

real party in interest.   While these discovery abuses may have occurred, the only methods by which such problems can be resolved is (1) renewed cooperation among counsel, or (2) discovery motion practice, including motions to compel and motions for sanctions. Constantly having to address motions to compel or for sanctions diminishes their impact and wears the patience of the court.   The Court fully expects all counsel to this litigation, and the parties they represent, to be forthcoming when asked to produce material which is discoverable when requested.   Any lack of candor or intransigence will be viewed unfavorably and addressed appropriately under the law.

Waterman/CGL point out that there have been "difficulties" with both the translation of written documents or statements and with interpretation of deposition responses.   Fortunately, Waterman/CGL had their own interpreter at one critical deposition and was able to translate the responses and inappropriate instructions to the witness.   While the Court cannot punish a party for an interpreter's violation of his oath, the Court would caution that any involvement or condoning of such practices by counsel or any of the parties, if

proven, will be sanctioned.  Since Waterman/CGL has obtained its own translation of the important statements in question and its own interpretation of the teleconference deposition, they have incurred no legal prejudice, other than the increased costs, which are likely considerable.

Waterman/CGL suggest that discovery should be denied when a party's aim is to delay bringing a case to trial, or to embarrass or harass a person from whom he seeks discovery.  Baron is entitled to seek evidence relevant to the limitation issues and to the collision.  When Baron has failed to produce requested discovery and motions have been filed, the Magistrate Judge has addressed those motions and ruled.  The Court finds no basis to deny the motion for issuance of letters rogatory, because the record does not demonstrate that Baron is merely seeking this discovery to harass Waterman/CGL.  If the discovery becomes repetitive or redundant, then appropriate motions may be filed and will be considered.

Another objection lodged is that Letters Rogatory cannot be used for expert testimony.  Baron represents that none of the depositions that it seeks are for expert testimony, but are for fact

witnesses.

It is suggested that because Baron filed suit in this district, it must produce witnesses employed by the Indian government to testify in this district.  Baron must produce its own employees in this district, as it is a party, but cannot be compelled to produce witnesses over which it has no control in the United States for deposition, nor can Waterman/CGL be ordered to produce non-employee witnesses in the United States for deposition, as it has no control over them.  It should be noted that not only did Baron file suit in this district, but Waterman/CGL filed the instant limitation action in this district.

Having reviewed the motion for issuance of Letters of Request addressed to the King of Norway, the memoranda in support and in opposition and the voluminous exhibits, and considering the dictates of F.R.Civ.P. 28(b), the motion for issuance of Letters of Request to the Kingdom of Norway must be granted.  The Court would direct Baron to amend its notice to include the correct trial date, which has yet to be selected.

Baron has filed a motion pursuant to F.R.Civ.P. 28(b) and the

Convention on the Taking of Evidence Abroad in Civil or Commercial Matters for an order issuing Letters of Request to the Courts of the Republic of Singapore requesting the issuance of compulsory process in order to depose (1) Manik Shahani, a principal of Marco Shipping Company (Pvt.) Ltd. ("Marco Shipping"), Waterman's agent for South and Southeast Asia, and an officer of Waterman, who Baron claims has extensive knowledge of Waterman's LASH Barge operations in India, the policies and rules governing Waterman's LASH operations, and the usual operating procedures and equipment specifications used in Waterman's LASH operations; (2) Captain A.K. Sharma and (3) Captain Anil Gidwani, who have been identified by other witnesses as Marco Shipping's operations people for Waterman's Haldia, India operation and thus would possess knowledge of Waterman's LASH barge operations at Haldia, India, the policies and rules governing Waterman's LASH operations and the usual operating procedures and equipment specifications used in LASH barge operations.  They were also responsible for hiring tugs, which bears directly upon the issues involved in this action; and (4) Mokhtar Sabor, an employee of Marco Shipping's operations departments, who has similar knowledge as the

13

other Singapore witnesses.

For the same reasons given for granting the motion for issuance of Letters of Request to the Kingdom of Norway, the Court finds that the motion for issuance of Letters of Request to the Kingdom of Singapore be granted.  The appropriate trial date should be inserted in the Letter of Request.

Baron has filed a motion for issuance of Letters Rogatory to the Chief Justice and his companion Puisne Judges of the High Court of Judicature at Calcutta, Republic of India, seeking to depose 22 witnesses located in Calcutta.  The description of the areas of knowledge on which they will be deposed is listed in the motion and amended motion.  While this is a large number of witnesses, the record does not reveal any specific reason why this request should not be granted, particularly when Baron asserts that it has filed approximately $ 14 million in claims, including wreck removal expenses, against Waterman/CGL, and if the limitation is upheld, Waterman/CGL would be limited to $ 100,000.00 in liability.  The motion and amended motion shall be granted, however, if it is shown that these numerous deposition requests are repetitive or abusive,

14

then the aggrieved party may apply for specific relief.

*Rule 12(b) Motion of Masahiro Toyoda, Hajime Ono,*
*and Toshiaki Takeuchi to Dismiss for Insufficiency*
*of Process, Lack of Jurisdiction over the Person,*
*and Improper Venue*

Waterman/CGL filed a Third Party Complaint against the movers in this motion, Masahiro Toyoda, Hajime Ono, and Toshiaki Takeuchi (hereinafter "the Baron directors"), the directors of R.L. Baron, S.A., the now dissolved corporation which owned the M/V GREEN OPAL. The Baron directors contend that the third-party complaint against them should be dismissed for insufficiency of service of process, for lack of personal jurisdiction, and for improper venue.

The vessel that sank in the Hooghly River, the M/V GREEN OPAL, was owned by one-ship Panamanian corporation, R.L. Baron Shipping, S.A. ("Baron"). After the M/V GREEN OPAL sank, Baron was dissolved on June 22, 1998 pursuant to the laws of Panama. Included in the lengthy record of this matter is the expert report of Roberto Lewis, an attorney at law with the firm of Morgan & Morgan, located in Panama. With respect to the proper party to sue and be sued after a Panamanian corporation has been dissolved, Mr. Lewis states, in pertinent part:

15

The dissolution of a company, under the context of Panamanian Corporate Law . . . is the act by which a company ceases to exist for the purposes of it's [sic] commercial exploitation. After the act of dissolution, the company may not engage in any further commercial transactions or new business. The only exceptions are those acts or transactions taken pursuant to it's [sic] liquidation.

In this respect, the liquidation of a company is the act, or series of acts, by which a dissolved company collects its due credits, liquidates and distributes it's [sic] assets and satisfies it's [sic] liabilities. Among the acts of liquidation, the company is entitled to commence legal actions to collect moneys owed to the company arising out of breach of contractual relations or tortious acts commited [sic] against the company or it's property.

To this extent, [Panamanian corporation law] states:

> Any corporation ceasing to exist by expiration of the term established in the Articles of Incorporation or by dissolution, shall, however, continue for a three year period, counted as of such date, for the specific purpose of prosecuting or defending suits by or against it or of settling its business, transferring and disposing of its property and dividing its capital stock; but in no case may the same continue with the business for which was organized.

16

The Law also states that the Directors of the company at the moment of dissolution, have a fiduciary duty to act in the best interest of the Shareholders of such company in the liquidation process under their care, and to this effect, they have a responsibility to commence any legal actions in favor of the company.

Article 86 [of Panamanian corporation law], in support of the aforesaid states:

> Whenever the existence of a corporation should cease by expiration fo the term of duration thereof or by dissolution, the Directors shall act as Trustees of the corporation, being empowered, upon payment of the debts of the corporation, to settle its affairs, collect its credits, sell and assign any of its property, divide its assets among its stockholders; and being empowered, in addition, to take action in the name of the corporation with respect to its credits and assets, and to represent the corporation in any action instituted against same.

Exhibit 1 to 12(b) Motion to Dismiss.

Waterman/CGL filed the third-party complaint against the Baron directors, all residents of Japan, in their capacity as Trustees of the corporation.  It is plain that their liability is limited to the assets of the corporation.   While Article 85 of Panamanian corporation law allows Baron to sue and be sued in its own name for

three years after its dissolution in June 22, 1998 (until June 22, 2001), Article 86 allows the Directors to sue and be sued *in their capacities as Trustees* of Baron.  Article 87 provides that "the Directors shall be jointly and severally liable for the debts of the corporations, but only up the amount of the assets in the funds the possession and administration of which has been entrusted to them."  Thus, the directors may be sued as Trustees of the corporation and they are jointly and severally liable, but their liability is limited to the assets of the corporation.[1]

Waterman/CGL served its third-party demand upon Baron's counsel.  They contend that this is proper service under Articles 1235 and 1237 of the Louisiana Code of Civil Procedure.  Specifically, they rely on article 1237, which states that:

> In cases wherein an individual is named in pleadings in more than one capacity, personal service on that individual is sufficient to constitute service of process on that individual in all capacities, including but not limited to as an individual, tutor, or a

---

[1]Waterman/CGL agrees in its memorandum that the Court must look to the law of the place of incorporation and the procedural requirements of F.R.Civ.P. 17(b) in determining the corporation's capacity to sue or be sued.

> representative of a legal or quasi legal
> entity, when it is clear from the pleadings or
> service instructions the capacities in which
> the individual is being served.

Waterman/CGL suggest that because Baron's counsel has appeared for Baron, then service is proper on Baron's counsel for the Baron directors. The Court does not agree with that interpretation of the article. Article 1237 means that if the Baron directors had been served in their individual capacities, then service would have been proper against those directors in their capacity as Trustees of the corporation, or *vice versa*. Here, however, service was made upon Baron, a dissolved corporate entity which retained the ability to be sued for three years following its dissolution. Service has never been made on the Baron directors in any capacity, and thus service on counsel of record for Baron is not valid.

The Court does not find that dismissal is appropriate at this time, inasmuch as it is a mere formality as there is little doubt that once served, these Baron directors will retain Baron's present counsel to represent them. However, since the Baron directors are apparently unwilling to waive service, Waterman/CGL will have to serve them under the Federal Rules of Civil Procedure under Rule

4(f), which provides for service by mail requiring a signed receipt. The Court would expect the Baron Directors to cooperate with the service process, since it is merely a formality, and the Court will afford Waterman/CGL 90 days to effect service, to be extended if necessary.  The motion to dismiss will be denied.

The Baron directors seek dismissal of the complaint for lack of personal jurisdiction.  The corporation which they represent, Baron, submitted itself to the jurisdiction of this court by filing suit.  *See*, LSA-R.S. 12:3201(a) of the Louisiana Long-Arm Statute, which provides that "A.  A court may exercise personal jurisdiction over a nonresident, who acts directly or through an agent, as to a cause of action arising from any one of the following activities performed by the nonresident: (1) Transacting any business in this state; and B.  In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States."  The corporation chose to submit to the jurisdiction of this court in filing suit and its directors, as Trustees of the corporation, whose

20

liability is limited to the corporation's assets, are likewise subject to the court's jurisdiction for that limited purpose.

Finally, the Baron directors contend that venue is improper. Venue in this district against these directors on the third-party demand is proper under LSA-R.S. 13:3203, which allows a non-resident against whom jurisdiction is gained under the Long-Arm Statute to be sued where the plaintiff is domiciled, and under 28 U.S.C. § 1391(d), which allows an alien to be sued in any district.  28 U.S.C. § 1391(c) is also instructive as it deems a defendant corporation to be a resident of any judicial district where it is subject to personal jurisdiction.  While these individuals are not corporations, they are being sued as trustees of a corporation and as such, they may be deemed under this provision to reside in any judicial district where they are subject to personal jurisdiction. The Court has already concluded that they are subject to personal jurisdiction in this district, since they filed suit here, and thus venue is proper in this district.

Accordingly, for the above and foregoing reasons,

**IT IS ORDERED** that:

21

1) The motion of Baron for Issuance of Letters of Request to the Kingdom of Norway and the amended Letter of Request be and is hereby **GRANTED**;

2) The motion of Baron for Issuance of Letters Rogatory to the Chief Justice and his companion Puisne Judges of the High Court of Judicature at Calcutta, Republic of India, and amended Letter Rogatory be and is hereby **GRANTED**;

3) The motion of Baron for Issuance of Letters of Request for International Judicial Assistance to the competent Judicial Authority of the Republic of Singapore and the amended Letter of Request be and is hereby **GRANTED**; and

4) The motion of Baron directors Masahiro Toyoda, Hajime Ono and Toshiaki Takeuchi under Rule 12(b) to dismiss for insufficiency of process, lack of personal jurisdiction, and improper venue be and is hereby **DENIED**.   Waterman/CGL is **DIRECTED** to serve these Baron directors individually within 90 days, with right to seek an extension of time if service is not accomplished within that time period.

New Orleans, Louisiana, May 31, 2000.

**MARCEL LIVAUDAIS, JR.**
United States District Judge